ERIC PERRY *v.* STATE OF CONNECTICUT ET AL.
(AC 25885)

Bishop, Harper and Hennessy, Js.

---

Argued January 18—officially released April 11, 2006

*Roger Lee Crossland,* for the appellant (plaintiff).

*Charles W. Fleischmann,* with whom, on the brief, was *Raymond J. Plouffe,* for the appellees (defendants).

*Opinion*

HARPER, J. The plaintiff, Eric Perry, brought this civil action sounding in negligence against the defendants, the state of Connecticut, the public defender services commission (commission) and Joseph G. Bruckmann. The plaintiff appeals from the judgment of

the trial court, following a court trial, rendered in favor of the defendants. The plaintiff challenges the court's rejection of two of his theories of negligence and claims that General Statutes § 4-160 violated his right, under the state and federal constitutions, to a trial by jury. We affirm the judgment of the trial court.

It is undisputed that in October, 1989, the plaintiff was charged with the crime of robbery in the first degree and remained incarcerated in lieu of bond while awaiting trial from October 17, 1989, until July 27, 1990. The commission subsequently assigned Bruckmann, a public defender in its employ, to represent the plaintiff in that matter. On July 27, 1990, Bruckmann and the prosecutor arranged for the victim, who earlier had identified the plaintiff by means of a photograph, to observe the plaintiff in person. After the victim observed the plaintiff, she informed the prosecutor that the plaintiff was not the perpetrator. The prosecutor entered a nolle prosequi, and the court granted the plaintiff's motion to dismiss the charge. After more than nine months, the plaintiff was released from custody.

The plaintiff commenced this civil action to recover monetary damages, with the permission of the General Assembly, as required by General Statutes §§ 4-159 and 4-165, after the claims commissioner recommended that no award be granted to the plaintiff in excess of $7500 and that his request for permission to commence a civil lawsuit against the state be denied. See House Joint Resolution No. 58 (2001).[1] The plaintiff's original complaint consisted of two counts, one count sounding in

---

[1] House Joint Resolution No. 58 (2001) provides: "That the recommendation of the Claims Commissioner, file number 12004 of said commissioner, that no award be granted to Eric Perry on his claim against the state in excess of seven thousand five hundred dollars and that permission to sue be denied, is rejected and Eric Perry is authorized to institute and prosecute to final judgment an action against the state to recover damages for his wrongful incarceration, pending trial."

negligence and the second alleging a deprivation of the plaintiff's civil rights.[2]

In the operative complaint, the second amended complaint, the plaintiff alleged that during the time of his incarceration, an attorney-client relationship existed between himself and Bruckmann. The plaintiff alleged that Bruckmann, acting as an agent of the state and the commission, breached his duty to represent him "diligently and competently." The plaintiff specifically alleged that Bruckmann failed to comply with his repeated requests to arrange for an in-person identification of him by the victim of the crime until July 27, 1990. The plaintiff alleged that the defendants' "failure to [arrange for] an in-person identification was the proximate cause of [his] continued imprisonment, and [that] this failure was compounded by the [d]efendants' failure to file a notice of defense of alibi, failure to file motions for bond reduction, failure to communicate with their client, and failure to obtain a copy of the slide or photograph which served as the basis for his arrest." The plaintiff alleged that the defendants were "not mindful" of the duties they owed him and "failed to abide by his decisions; failed to act with reasonable zeal, diligence and promptness; failed to keep their client reasonably informed; failed to comply with reasonable requests for information; and failed to take

---

[2] The defendants denied liability and, by way of special defenses, alleged that the joint House and Senate resolution authorizing this action was unconstitutional as a private emolument and that the action, therefore, violated the doctrine of sovereign immunity, that the action was barred by the applicable statute of limitations and that, if the resolution authorizing the action was constitutional, the action fell outside its limited scope and, therefore, was barred by the doctrine of sovereign immunity.

The plaintiff, in turn, denied each and every allegation in the defendants' special defenses. Prior to trial, the defendants filed a motion to dismiss the action based generally on the grounds set forth in their special defenses. The court granted the motion in part, dismissing the second count of the complaint alleging a deprivation of the plaintiff's civil rights and denying the motion as to the first count, which sounded in negligence.

reasonable efforts to expedite the litigation." The plaintiff also alleged that during his incarceration, he suffered the loss of his liberty and was assaulted by other prisoners, and that as a result of his incarceration, he suffered physical, emotional and economic losses, including, but not limited to, a significantly impaired ability to earn an income.

Following an evidentiary hearing, the court issued a memorandum of decision setting forth its findings of fact and its conclusions with regard to the plaintiff's specific claims of negligence, which the court aptly characterized as claims of legal malpractice. The court concluded that "under the circumstances, Bruckmann's election not to seek a bond reduction was reasonably prudent and in no way an act of malpractice"; "that Bruckmann's refusal to request a lineup, despite [the plaintiff's] preference that he do so, was not a violation of the standard of care owed by Bruckmann to his client and was not negligence"; and "that Bruckmann's investigation of the [plaintiff's] alibi defense, as well as his refusal to disclose it voluntarily for any reason, was consistent with the standard of care and was not negligence." Insofar as the plaintiff claimed that Bruckmann failed to obtain his informed consent to proceed with the trial strategy that he did, the court found: "[I]n each of those instances where the plaintiff was entitled to be apprised of his lawyer's 'strategy' or plan for [the plaintiff's] defense, [the plaintiff] was so advised. The court finds that while there were understandable periods of time when the plaintiff took initial exception to attorney Bruckmann's strategy, each one of the components of that strategy was explained to [the plaintiff] and his consent was ultimately obtained, though, on occasion, begrudgingly. The court finds that [the plaintiff] was properly informed of the ultimate plan to obtain a dismissal of the charges against him and that he made an informed consent when he agreed to allow Bruck-

mann to proceed to accomplish just what he promised [the plaintiff] he would accomplish—a dismissal of the charges."

After rejecting each of the specific claims of negligence, the court stated: "[T]he plaintiff offered considerable evidence and testimony as to the damages and injuries which he sustained as a result of his incarceration. Consistent with the previous findings, the court further finds that the plaintiff has failed to prove that such injuries and losses were proximately caused by the negligence of the defendants and, therefore, finds that the plaintiff is not entitled to either economic or noneconomic damages in this case."

I

The plaintiff first challenges the court's conclusions that Bruckmann had not breached a duty of care with regard to the handling of the alibi defense and that Bruckmann had obtained the plaintiff's informed consent to employ the defense strategy that he did. The plaintiff claims, with regard to the first aspect of his claim, that the court applied "the wrong standard of law concerning alibis" and, with regard to the second aspect of his claim, that the court applied "an incompatible standard of law concerning a client's informed consent."[3]

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . If a plaintiff cannot prove all of those elements, the cause of action fails.

---

[3] Despite framing each aspect of his claim as a challenge to the legal principles applied by the court, the plaintiff has neither identified legal principles misapplied by the court nor suggested which legal principles the court should have applied in their place. Our review of the plaintiff's briefs, as well as our consideration of the arguments presented by his attorney during oral argument before this court, leads us to conclude that the plaintiff takes issue with the court's factual findings as well as its application of the legal principles that apply to the facts found.

. . . [I]n a negligence action . . . [a] causal relation between the defendant's wrongful conduct and the plaintiff's injuries is a fundamental element without which a plaintiff has no case . . . ." (Internal quotation marks omitted.) *Gurguis* v. *Frankel*, 93 Conn. App. 162, 167, 888 A.2d 1083, cert. denied, 277 Conn. 916, 895 A.2d 789 (2006). A plaintiff cannot succeed in a legal malpractice action absent a showing that a defendant breached the professional standard of care and that such breach proximately caused the injury claimed. See *Kregos* v. *Stone*, 88 Conn. App. 459, 465, 872 A.2d 901, cert. denied, 275 Conn. 901, 882 A.2d 672 (2005).

The court set forth detailed factual findings with regard to the issues of whether Bruckmann was negligent in his investigation and handling of the alibi defense and whether, when necessary, Bruckmann obtained the plaintiff's informed consent to employ the defense strategy that he did. These findings are supported by the evidence presented at trial. These findings, as well as our thorough review of the record, amply support the court's conclusion that Bruckmann thoroughly investigated the plaintiff's alibi defense and handled the alibi defense in accordance with a sound trial strategy. The court's findings, as well as our review of the record, also support the court's conclusion that, when it was necessary, Bruckmann competently explained to the plaintiff each component of the defense strategy that he formulated and properly obtained the plaintiff's informed consent to employ such strategy. The court's conclusion that Bruckmann comported to the requisite standard of care is supported in law and in fact.

II

The plaintiff next claims that § 4-160 (f), which requires actions against the state by the claims commissioner or, as here, by the General Assembly be tried to the court, violated his right, under the state and federal

constitutions, to a trial by jury. We decline to review this unpreserved claim.

Our review of the record reveals that the plaintiff did not raise this claim at trial.[4] The plaintiff raises this issue for the first time on appeal and does not request review of this constitutional claim under any doctrine under which this court may review unpreserved claims.[5] This court is not bound to consider claims raised for the first time on appeal; Practice Book § 60-5; and the plaintiff has not set forth any reason why we should deviate from this well settled rule.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The plaintiff appears to assert that he raised the issue before the trial court, prior to the commencement of the trial, during the following colloquy:

"The Court: Maybe I should ask you, this plaintiff's attorney . . . in regard to the several motions that I'm just recently becoming familiar with, is there any one of them . . . at this point you feel the court should take up in a logical order, which would be the first?

"[The Plaintiff's Counsel]: If I can just take one exception on the record and then [another plaintiff's attorney] will address the matters related to late disclosure of expert.

"The Court: All right.

"[The Plaintiff's Counsel]: We'd just like to take exception to the fact that we are prohibited from a trial by jury versus the state.

"The Court: Did you make a motion for a trial by jury?

"[The Plaintiff's Counsel]: No, Your Honor.

"The Court: Okay."

The foregoing "exception" concerning the plaintiff's claimed desire for a trial by jury did not raise the constitutional issue that the plaintiff raises on appeal nor preserve the issue for our review. Further, the record does not reflect that the plaintiff raised the issue at any other time during the trial. Consequently, the plaintiff did not even attempt to sustain his heavy burden of demonstrating that he was denied a constitutional right and, thus, did not afford the court an opportunity to rule on the matter.

[5] In his reply brief, the plaintiff suggests that this court should invoke its inherent supervisory authority to review his unpreserved claim. We disagree on two grounds. First, the plaintiff improperly seeks review under this doctrine for the first time in his reply brief. Generally, this court does not consider claims raised for the first time in a reply brief. See *Collard & Roe, P.C.* v. *Klein,* 87 Conn. App. 337, 344 n.3, 865 A.2d 500, cert. denied, 274 Conn. 904, 876 A.2d 13 (2005). Second, even were the request proper, the plaintiff has not persuaded us that his claim warrants such an extraordinary remedy.